FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 SEP -5 PM 4: 59

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR407-164 |
| ) | |
| ISAIAH JOHNSON, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant Isaiah Johnson has filed a motion to suppress evidence seized during a search of his vehicle following a traffic stop on September 28, 2005. Doc. 7. On August 22, 2007, the Court held an evidentiary hearing and received testimony from government witnesses Ronald Hooks, a lieutenant with the Richmond Hill Police Department, and John Meachum, a deputy with the Bryan County Sheriff's Office. Defendant testified on his own behalf relating to the circumstances surrounding the traffic stop and search of his vehicle. For the reasons that follow, the motion to suppress should be DENIED.

# I. BACKGROUND

On September 28, 2005, at approximately 11:00 p.m., a patrol officer with the Richmond Hill Police Department discovered that someone had broken into and attempted to hot-wire a vehicle parked on the lot of a local used car dealership. Lt. Ronald Hooks, the supervisor on shift, reported to the area and noticed three men standing beside a Dodge Dakota pickup truck that had pulled into a wash bay of a self-service car wash located some 50 yards from the dealership. It did not appear to Lt. Hooks that the men were either washing or vacuuming the vehicle. His suspicions aroused, Lt. Hooks decided to approach the car wash. As he did so, the pickup exited the car wash and proceeded south on Highway 17.

Lt. Hooks followed the pickup in his marked patrol car and, after radioing in the vehicle's license plate, learned that the tag was registered to a 1999 Volkswagen. While following the extended-cab pickup, Lt. Hooks noticed excessive movement by the passenger in the backseat. He also observed the pickup twice cross over the highway "fog line." Lt. Hooks then activated his blue lights, and when the vehicle came to a stop, he instructed the driver (defendant Johnson) to step out of the truck and

produce his license, proof of insurance, and registration. Defendant presented his license but could not produce either proof of insurance or registration for the pickup. He did, however, furnish the registration for a 1999 Volkswagen and a bill of sale indicating that he had recently purchased the pickup. During this encounter, Lt. Hooks noticed that defendant appeared to be somewhat nervous. He did not see any evidence that the pickup had recently been washed, for it was neither wet nor unusually clean.[1]

Lt. Hooks explained that he had stopped defendant for failure to stay within his lane of travel, having an improper tag, and to investigate a break-in at the car dealership located near the car wash. After reviewing defendant's paperwork, Lt. Hooks returned to his patrol car and wrote defendant a citation for failure to maintain lane and gave him a warning for operating a vehicle with an improper tag. He then reapproached the pickup to obtain its VIN so that he could confirm whether the vehicle was insured. As he neared the pickup, he detected the slight odor of burnt marijuana.

---

[1] Defendant testified that he had just washed and cleaned out his vehicle, and he claimed that "everyone was sitting still" as the pickup proceeded down the highway. The Court has considered this testimony but finds Lt. Hooks to be the more credible witness. Furthermore, these are insignificant matters that do not affect the Court's ultimate analysis.

3

After issuing defendant the citation and warning, Lt. Hooks asked if there were any weapons or drugs inside his vehicle and patted defendant down to ensure that he was not armed. Lt. Hooks then asked if he could search the pickup. Defendant responded that there were no narcotics in the vehicle and that the officer could call a drug dog to walk around it. Lt. Hooks summoned a dog to the scene by calling Deputy Meachum of the Bryan County Sheriff's Department.[2] Deputy Meachum, who was located approximately six miles away, arrived within seven to ten minutes after defendant consented to the dog sniff. Deputy Meachum testified that he also smelled the odor of marijuana when he approached defendant's vehicle. As the deputy led his dog, Mirza, around defendant's vehicle, the dog alerted on the driver's door. When Lt. Hooks explained to defendant that the dog had alerted, defendant replied that there were no drugs in the vehicle and that the officers could search the truck. The officers then entered the pickup and located a pump shotgun under the rear seat, some

---

[2] There is some dispute as to whether Lt. Hooks told defendant that he was free to leave after he issued defendant the traffic citation and verbal warning. Defendant testified that after Lt. Hooks issued him the citation, Hooks told defendant that he was "free to go." Lt. Hooks testified that he neither informed defendant that he could go nor instructed him that he could not leave. Defendant, however, does not contend that he was detained against his will after receiving the traffic citation, and in fact he testified that he did not feel as if he was under detention at all.

shotgun shells, a "minimal" amount of marijuana residue,[3] and other items. After learning that defendant was a convicted felon, defendant was placed under arrest.

## II. ANALYSIS

Defendant argues that the initial stop of the vehicle was pretextual and therefore violative of the Fourth Amendment guarantee against unreasonable searches and seizures. Doc. 14 (defendant's amended motion to suppress). Defendant further contends that the search of his vehicle was conducted without probable cause and without consent, for although defendant concedes that he permitted the officers to conduct a free air scan of his vehicle, he contends that he never consented to a search of the vehicle's interior. Id.

Defendant's "pretext" argument rests upon a legal theory that has been squarely rejected by the Supreme Court. "As a general matter, a decision to stop an automobile is reasonable where the police have probable

---

[3]Although the police report does not reference any marijuana residue in defendant's vehicle, Deputy Meachum testified that he found a small amount of residue on the driver's side of the vehicle.

cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 809 (1996). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813. Therefore, "a police officer may stop a vehicle '[w]hen there is . . . probable cause to believe the driver is violating any one of a multitude of applicable traffic and equipment regulations' relating to the operation of motor vehicles." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (quoting Delaware v. Prouse, 440 U.S. 668 (1979)).

Lt. Hooks testified that in addition to suspecting that defendant and his companions were engaged in criminal activity, he determined that defendant's vehicle displayed an incorrect tag and observed defendant cross the fog line twice. Under Georgia law, a vehicle must properly maintain a lane, O.C.G.A. § 40-6-48, and display a valid license plate. O.C.G.A. § 40-2-8. Defendant testified, however, that Lt. Hooks informed him that the reason for the stop was because his tag light was out. Defendant then admitted that his tag light was either out or partially obscured. Under Georgia law, a taillight or separate light must adequately illuminate the rear registration plate. See O.C.G.A. § 40-8-23; Draper v. Reynolds, 369

F.3d 1270 (11th Cir. 2004) (officer had probable cause to stop vehicle after observing the vehicle's tag light out). While the Court credits Lt. Hooks' testimony regarding the reason he stopped defendant, defendant admits that his vehicle was not in compliance with the Georgia traffic code. Lt. Hooks, therefore, had probable cause to believe that a traffic violation had occurred. The stop of defendant's vehicle to enforce the Georgia traffic laws was entirely proper, and the fact that the officer had another reason for the stop (to investigate his suspicion that defendant and his passengers had broken into a vehicle on the car lot) is simply irrelevant to the Fourth Amendment inquiry. See United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997) (holding that Whren "conclusively refutes the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation has occurred").

Nor is there any merit to defendant's contention that the officers lacked probable cause to search his vehicle. Defendant concedes that he consented to a scan of his vehicle by a drug dog. Id. Once the dog arrived approximately ten minutes later, both Lt. Hooks (a former dog handler)

and Deputy Meachum observed the dog alert on defendant's vehicle.[4] The Eleventh Circuit has recognized that an alert by a drug dog is sufficient to provide probable cause for the search of a vehicle. United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006); United States v. Dunkley, 911 F.2d 522, 527 (11th Cir. 1990). Furthermore, both officers detected the odor of burnt marijuana emanating from defendant's vehicle, and in the context of automobile searches, it is "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982). "At the point marijuana was smelled by [the officer], probable cause to believe a crime had been committed, namely . . . the possession of contraband, arose." Id. See United States v. Staula, 80 F.3d 596, 602-03 (1st Cir. 1996) (aroma of burnt marijuana coming from passenger compartment of pickup truck stopped for license plate violation furnished officer with probable cause to search entire passenger compartment); United States v. Haley, 669 F.2d

---

[4] Defendant testified that he saw the dog walk around the vehicle but that the dog did not sit down or alert in any manner. The Court has considered this testimony but finds that the officers' testimony to be more credible on this point.

201, 203 (4th Cir. 1982) (strong odor of marijuana emanating from vehicle stopped for speeding gave officer probable cause to search vehicle); United States v. Rojas, 538 F.2d 670 (5th Cir. 1976) (odor of marijuana emanating from vehicle stopped at Border Patrol checkpoint sufficient to establish probable cause to search the vehicle); see also United States v. Griffin, 109 F.3d 706, 708 (11th Cir. 1997) (odor of marijuana detected during traffic stop furnished reasonable suspicion justifying further investigation of suspect). Moreover, once the officers informed defendant that the dog had alerted, defendant specifically consented to a search of his vehicle. Thus, given the particular facts of this case, the search of defendant's vehicle did not offend the Fourth Amendment.

## III. CONCLUSION

The evidence establishes that the initial stop of defendant's vehicle was supported by probable cause to believe that defendant had committed violations of the Georgia traffic code. During the course of the lawful traffic stop, defendant consented to a free air scan of his vehicle by a drug dog.

The dog's alert, coupled with the officers' own detection of the odor of marijuana, furnished probable cause to believe that narcotics were concealed within defendant's vehicle. Given the exigency attendant to a roadside stop, the officers were entitled to search the vehicle on the spot. As there was no violation of defendant's Fourth Amendment rights, his motion to suppress should be DENIED.

**SO REPORTED AND RECOMMENDED** this 5TH day of **September, 2007.**

*[signature]*
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**